Filed 03/26/25

VERMONT SUPERIOR COURT
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



ENVIRONMENTAL DIVISION
Docket No. 24-ENV-00061

| | |
|---|---|
| **3 Gill Terrace DRB Decision Appeal** | **DECISION** |

This is an on-the-record appeal of a June 20, 2024 decision of the Village of Ludlow Development Review Board (DRB) affirming the Zoning Administrator's issuance of a building permit[1] for a single-family residence to Marissa and John Szczepanski (Applicants). Neighboring landowners Cathleen and Lee Ellmaker and Leslie and Marc Stuart (together, Appellants) appealed the DRB's decision to this Court.

In this matter, Appellants are self-represented. Applicants are represented by Attorney Bert C. Whidden. The Village of Ludlow (Village) is represented by Attorney James Christopher Callahan.

## Standard of Review

In an on-the-record appeal made pursuant to V.R.E.C.P. 5(h), the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). The Court has no authority to consider new evidence. See In re Lawrence Site Plan Approval, No. 166-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 9, 2011) (Durkin, J.); In re Marble Dealership Realty LLC Site Plan Approval, No. 169-12-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Aug. 13, 2014) (Walsh, J.). Further, this Court has no authority to make its own factual determinations and, instead, the Court reviews the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." See 24 V.S.A. § 1209(a)–(b). The Court will affirm factual findings only if they are

---

[1] The Zoning Administrator, DRB, and the parties refer to the permit at issue as both a "building permit" and a "zoning permit." The Ludlow Zoning and Flood Hazard Regulations refer simply to zoning permits. Zoning permit is also the terminology generally used in Title 24, Chapter 117 of the Vermont Statutes Annotated to describe a permit issued by the Zoning Administrator authorizing land development. Ordinarily, a "building permit" is a separate permit issued pursuant to Title 24, Chapter 83 of the Vermont Statutes Annotated. However, to be consistent with the DRB's decision, the Court will refer to this zoning permit application as the "building permit application."

1

supported by substantial evidence in the record below. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 568. When the Court examines whether there is substantial evidence in the record, it does not assess the credibility of witness testimony or reweigh conflicting evidence in the record. Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Supreme Ct., Nov. 10, 2004) (unpublished mem.). The Court simply looks to whether the record below includes relevant evidence that "a reasonable person could accept . . . as adequate" support for the factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

When reviewing the underlying legal conclusions, the Court does so without deference, unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7.

Our review is further limited to those issues raised by an appellant in their Statement of Questions. See V.R.E.C.P. 5(f). Thus, we review the DRB's decision on appeal with these legal standards in mind, and within the context of the legal issues preserved by Appellants' Statement of Questions.

## Factual Background

Applicants own property located at 3 Gill Terrace, in the Village of Ludlow, Vermont (the Property). The Property is in the Village Residential (V-R) [Zoning] District. So-called "Single-unit dwellings" are listed as a permitted use in the V-R District under the Village's Zoning and Flood Hazard Regulations (Regulations).[2]

On March 6, 2024, Applicants submitted a building permit application for a single-family home to the Village of Ludlow Zoning Office. The Zoning Administrator approved the application and issued a building permit on March 22, 2024. Appellants timely appealed the Zoning Administrator's decision to the DRB, raising various concerns regarding stormwater and drainage, erosion, screening, privacy, exterior lighting, property width, parking, snowplowing, and elevation.[3]

---

[2] The Village filed two different versions of the Regulations with the Court without providing any explanation regarding which version applies to the building permit application at issue. The Court believes that the 2019 Regulations are controlling, but it does not have information regarding when the 2024 Regulations were first noticed for a hearing with the Selectboard. See 24 V.S.A. § 4449(d). After review, the Court concludes that the relevant provisions of the two different versions are, except as otherwise noted, functionally and materially identical. Absent any objections or issues raised regarding which version controls, we will apply the provisions of the 2019 Regulations.

[3] The Court is aware of the prior permitting history involving the Property and these parties. Specifically, we recognize that Appellants previously raised concerns regarding stormwater runoff during subdivision review proceedings — initiated by Applicants' predecessor in interest — that authorized creation of the lot at issue here, and that the DRB did not consider those concerns at that time. Rather, the DRB indicated to Appellants that their concerns would be taken up once there was a proposed building permit application for the Property, notwithstanding the absence of any provision of the Regulations providing for the review of stormwater impacts where an applicant proposes to construct a permitted use,

The DRB conducted a site visit to the Property and held a warned public hearing for the appeal on May 13, 2024. During the hearing, the Zoning Administrator testified regarding her permitted use review process and explained why she issued the building permit. Also, during the hearing, the DRB instructed Applicants to submit additional information in support of the building permit application, including a foundation/basement plan, and to address Appellants' concerns regarding stormwater, drainage, erosion, privacy, screening, and lighting.

On May 20, 2024, Applicants submitted responses to the privacy and lighting concerns and submitted a stormwater mitigation plan. In response, Appellants submitted an email outlining their continued concerns with the building permit application. The email also contained a letter from Greg Kepler, a licensed professional civil engineer, describing concerns with the stormwater mitigation plan.

On June 20, 2024, the DRB denied Appellants' appeal, and in so doing, approved the building permit application. Appellants timely appealed the DRB's decision to this Court.

### Statement of Questions

Appellants have submitted 11 Questions in their Statement of Questions for this Court's review on appeal. They ask:

1. [Dismissed by the Court]

2. Did the Ludlow Zoning Office err as a matter of law by issuing a building permit without referring it to the DRB, despite abutters' concerns about stormwater runoff, erosion risks, and drainage impacts raised during the December 12, 2022 hearing?

3. Did the Ludlow Zoning Office violate the Village of Ludlow Zoning and Flood Hazard Regulations Amended, Article 2, Section 221 by issuing a building permit without a comprehensive plot plan to verify that required setbacks were met?

4. Did the Ludlow Zoning Office violate Village of Ludlow Zoning and Flood Hazard Regulations Amended, Article 2, Section 221 by issuing a building permit without a comprehensive elevation plan to ensure the structure complied with height limitations?

5. Did the DRB err in approving the stormwater mitigation plan and building permit without substantial evidence of the plan's efficacy, including conformance with stormwater and erosion control best management practices?

such as a single-family dwelling, on a lot. While we recognize that Appellants may have received misleading advice from the DRB, their remedy was to appeal the subdivision approval to this Court. Because no appeal was taken, this prior history has no bearing on the Court's review over the building permit application and the DRB's decision related thereto. See 3 Gill Terrace DRB Decision Appeal, No. 24-ENV-00061, slip op. at 2, n.1 (Vt. Super. Ct. Envtl. Div. Dec. 23, 2024) (McLean, J.) (explaining why the prior subdivision permit proceeding is outside this Court's jurisdiction).

6. Did the DRB err as a matter of law in that their decision fails to consider or address the deficiencies identified in the Civil Engineer's assessment (authored by Greg Kepler) in the appellants' response to the general contractor's stormwater mitigation plan?

7. Did the DRB violate the Village of Ludlow Zoning and Flood Hazard Regulations (Amended) Section 520.4 when denying the appeal and approving the building permit without a grading or site elevation plan?

8. Is the DRB's decision to deny the appeal and approve the building permit by allowing the property's water to be directed into the town's stormwater system in violation of the Town of Ludlow Highway Access Ordinance, Article 3, Section 3.01?

9. Is the DRB's conclusion that the mitigation plan would not cause additional hardship, and would improve drainage by directing water into the Village's storm drains, supported by substantial evidence?

10. Did the DRB provide sufficient justification, per 24 V.S.A. § 1209(b), in addressing and incorporating abutters' concerns into the final decision?

11. Is the DRB's denial of the appeal and approval of the building permit contrary to the weight of the evidence presented?

Amended Statement of Questions (filed on October 29, 2024).

## Discussion

### I.  DRB's Findings and Conclusions

Municipalities that elect to conduct on-the-record review must satisfy the procedural requirements of the Vermont Municipal Administrative Procedure Act (MAPA). See 24 V.S.A. § 4471(b). MAPA requires municipal panels' final decisions to "separately state findings of fact and conclusions of law." 24 V.S.A. § 1209(a). Findings of fact must "explicitly and concisely restate the underlying facts that support the decision" and be "based exclusively on evidence" in the record. Id. § 1209(a), (b). Conclusions of law must be based on those findings. Id. § 1209(c). As this Court has previously explained, "[g]iven the nature of the on-the-record review process… we anticipate[] that the DRB Decision [will] include specific factual findings on the nature of the Applicant's proposal…" In re Buss Conditional Use Application, No. 130-10-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Apr. 29, 2013) (Durkin, J.).

As noted above, this is an appeal of a building permit for a single-family home, a permitted use in the involved zoning district. A zoning permit for a permitted use is one of the most basic and common permits that exist at the local level. Even when reviewing a zoning administrator's decision

4

for a permitted use, however, an appropriate municipal panel must identify certain foundational regulatory information and provide a threshold level of analysis.[4]

As discussed below, in this case, the DRB's decision fails to sufficiently lay out its findings of fact and conclusions of law with respect to certain provisions in the Regulations, as raised by Appellants in their Statement of Questions and legal briefs. While the DRB's decision contains some references to evidence in the record, it does not list the applicable provisions in the Regulations or render separate conclusions regarding compliance with each relevant provision. With that overview in mind, we now turn to Appellants' Statement of Questions, which guides the scope of our review.

## II. Appellants' Statement of Questions

Many of the Questions before the Court, as set forth in Appellant's Statement of Questions (Revised), demonstrate a fundamental misunderstanding of the DRB's authority and obligations.[5] Nevertheless, we review Appellants' Questions to determine whether they raise relevant and appropriate issues with the DRB's decision. In doing so, we consider matters that are intrinsic to the issues raised in the Questions, even if somewhat unartfully drafted. In re Atwood Planned Unit Development, 2017 VT 16, ¶ 17 (citation omitted).

Appellants' Question 2 asks whether the Zoning Office erred in failing to refer the building permit application to the DRB for a more comprehensive review. This Question presents several issues. First, the DRB had the occasion to consider the application on its merits by virtue of Appellants' appeal to the DRB. Therefore, we fail to understand the relief sought by this Question.

Additionally, there is no requirement in the Regulations that would require the Zoning Administrator to refer a building permit application for a single-family home to the DRB. Rather, the Regulations provide that "[a]ll applications for a Zoning Permit… shall be submitted to the Administrative Officer." Regulations § 221. The Regulations also list the powers of the DRB, which expressly include initial review over variances, conditional uses, and subdivisions, but do not expressly mention zoning permits. Regulations § 250.1. This makes sense because a zoning permit should first

---

[4] For example, the appropriate municipal panel should first introduce the parties, describe the proposed project, and identify the zoning district in which the project is located. From there, the appropriate municipal panel should summarize the evidence that was received, and based on that evidence, state the findings of fact. The decision must identify the applicable provisions of the municipality's zoning regulations and determine whether the project satisfies those provisions. The decision should clearly state the legal conclusions on each issue. Lastly, the decision should clearly state the panel's ultimate action or disposition of the matter before it, as decided by an affirmative vote of a majority of the panel members (e.g., whether the appeal is upheld or denied and/or the zoning administrator's decision is affirmed or reversed). 1 V.S.A. § 172.

[5] That Appellants misunderstand the DRB's authority and obligations does not suggest in any way that their concerns regarding stormwater and other impacts are not sincerely held or invalid.

be issued or denied by the administrative officer, after which an appeal may be taken to the DRB. See 24 V.S.A. § 4449(a)(1); 24 V.S.A. § 4465(a). Accordingly, the Zoning Office correctly rendered a decision on the building permit application without first referring it to the DRB. Therefore, we answer Question 2 in the negative.

Next, Questions 3 and 4 ask whether the Zoning Office violated Regulations § 221 by issuing a building permit without considering a comprehensive plot plan or elevation plan, respectively. First, this is an appeal of the DRB's decision, not the Zoning Administrator's. Additionally, it is unclear what Appellants mean by reference to "comprehensive" plans. Nevertheless, we understand these Questions to ask whether the DRB's decision with respect to setbacks and building height is supported by substantial evidence in the record. See Appellants' Brief at 19–20.

Regulations § 221 requires an applicant to submit a plot plan showing "the dimensions of the lot to be built on, and the location of the building and any accessory structures, showing setbacks, to be erected." Regulations § 221. Similarly, § 221 requires "an elevation drawing showing the elevations of the buildings."[6] Id. In this context, we interpret the language "elevations of buildings" in § 221 to mean building height.

In reviewing the record, Applicants clearly submitted various drawings containing setback information, building location, floor plans, and elevations. See Record at 7–9, 11–19.[7] The DRB's decision directly references the subdivision survey which depicts building location and setback distances. Accordingly, the DRB's decision with respect to setbacks is supported by substantial evidence in the record and we answer Question 3 in the negative. However, the DRB did not make any specific findings or conclusions with respect to building height. Because this requisite information is missing from the DRB's decision, we **REMAND** the application to the DRB to determine whether the application conforms to the applicable "building height maximum" requirement in the Regulations, as measured using the definition for building height provided in the Regulations. Regulations § 420; Regulations Art. 7 ("Building Height").

---

[6] In the 2024 Regulations, this language in § 221 has been amended to require "[d]rawings stamped 'for construction,' showing the floor plans (all levels) and elevations of the building for buildings over 500 square feet." The record contains floor plans and elevation drawings and certain elevation plans contain hand-written notations stating: "For construction per manufacturer." Record at 11, 42.

[7] The Record in this case consists of sequentially numbered record documents (filed by the Village and Bates stamped 0001-00052) (Record) and copies of the Village's zoning regulations, filed with the Court on November 15, 2024. Following a Motion to Compel Corrections to Town Paper Record, which the Court approved in part and denied in part, the record documents were supplemented by the Village on or about January 3, 2025, to include additional pages missing from the record as initially filed (Bates stamped 00064-00106) (Supplemental Record). It is not clear to the Court why the Bates numbering is not sequential between the Record and Supplemental Record documents.

Questions 5 and 6 ask whether the DRB erred by approving the stormwater mitigation plan and by not addressing deficiencies in the plan.[8]  Similarly, Question 9 asks whether the DRB's conclusions with respect to the mitigation plan are supported by substantial evidence.  Appellants challenge the DRB's conclusions with respect to stormwater mitigation by suggesting that the DRB simply restated aspects of the mitigation plan.  In doing so, Appellants argue that the DRB's conclusions are not supported by substantial evidence.

First and foremost, the DRB had no obligation, and potentially lacked authority, to consider stormwater mitigation as part of this building permit application.  There is no requirement in the Regulations that an application for a building permit include a stormwater mitigation plan.  Rather, the DRB's discussion regarding stormwater was in direct response to Appellants' concerns regarding runoff.[9]  Even though information related to stormwater mitigation, as requested by the DRB, was not required under the Regulations, Applicants voluntarily provided such information, and they did not/do not challenge the DRB's authority to make such a request.[10]

As the Court has previously explained, Appellants' concerns regarding stormwater mitigation arguably could have been addressed during subdivision review, but they did not appeal the subdivision permit.  Even if a subdivision permit was improperly issued, the Court lacks jurisdiction in the present appeal to consider subdivision review standards or any other standards in the Regulations that do not apply to a building permit for a single-family home.  See 3 Gill Terrace DRB Decision Appeal, No. 24-ENV-00061, slip op. at 2, n.1 (Dec. 23, 2024) (McLean, J.) (explaining that subdivision review standards are outside this Court's jurisdiction over the building permit).

Moreover, even if there was a requirement in the Regulations that the DRB consider stormwater mitigation in connection with an application for a single-family dwelling in the V-R District, the mitigation plan is itself the evidence upon which the DRB relied in reaching its conclusions.  Appellants' letter from Greg Kepler, a licensed civil engineer, identifying deficiencies in the plan, is unavailing.  It is beyond this Court's authority in this on-the-record appeal to assess the

---

[8] Applicants provided a written stormwater mitigation plan narrative and sketches depicting various stormwater control measures, including gutters, a retaining wall, and a perimeter drain that directs runoff into a Town storm drain. Supplemental Record at 65–69.

[9] This discussion may also be related to the DRB's prior indication to Appellants that their concerns regarding stormwater would be taken up once there was a proposed building permit application.

[10] In the absence of a cross-appeal, the issue of the DRB's authority to require stormwater mitigation information from the Applicants is not properly before the Court. Village of Woodstock v. Bahramian, 160 Vt. 417, 424 (1993). Further, to the extent that the Applicants agreed to undertake stormwater-related improvements, this Court lacks the ability to review them in the absence of relevant regulatory provisions.

7

credibility of witness testimony or reweigh conflicting testimony. For all these reasons, we conclude that the DRB's conclusions with respect to stormwater mitigation, to the extent they have any applicability in this proceeding, were supported by substantial evidence in the record. Therefore, we answer Questions 5, 6, and 9 in the negative.

Question 7 asks if the DRB violated Regulations § 520.4 by failing to consider a grading or elevation plan. While § 520.4 does not require any specific plans or materials to be submitted or considered, this section provides that "[n]o grading cut or fill shall be carried out in any district, which leaves the slope of the finished grade in excess of one to two." Regulations § 520.4. While it appears that Applicants did, in fact, submit several elevation plans and topographic drawings, the DRB's decision does not make any specific factual findings regarding the finished grade, nor does it render a conclusion regarding compliance with § 520.4. Accordingly, we **REMAND** the application to the DRB to make specific factual findings and conclusions regarding the finished grade. If necessary, the DRB may take new evidence to establish these requisite facts.

Question 8 asks whether the diversion of stormwater into a town storm drain complies with the Town Highway Access Ordinance. Again, this is an application for a building permit, which is regulated under the Regulations. There is no reference within the Regulations to the separately enacted Town Highway Access Ordinance. The Highway Access Ordinance is not relevant to review over the building permit application absent a direct reference within the Regulations. Because there is no such reference in the Regulations to standards or criteria in the Town Highway Ordinance upon which to deny the building permit application, we answer Question 8 in the negative.

Lastly, Questions 10 and 11 ask generally whether the DRB's decision adequately addressed and incorporated Appellants' concerns and whether the decision is contrary to the weight of the evidence. We interpret these Questions as catch-all questions intended to challenge the evidentiary basis for the DRB's conclusions. However, the Questions reflect a basic misunderstanding of the DRB's authority and responsibilities. The DRB had no obligation to address each of Appellants' concerns in its final decision irrespective of their relevance to the standards for issuance of a building permit. See 24 V.S.A. § 4460(e) (listing the review functions of appropriate municipal panels, including appeals from a decision of the administrative officer pursuant to § 4465 of Title 24). Rather, the DRB's job was to ensure that the building permit application, as issued by the Zoning Administrator, complied with the Regulations. As explained above, many of Appellants' concerns are outside the scope of review over this building permit application, particularly those pertaining to stormwater mitigation. However, to the extent that Applicants agreed to implement stormwater mitigation

8

measures, the Court will not disturb such voluntary mitigation. Also, as explained above, Appellants have identified two deficiencies with the DRB's decision. Questions 10 and 11 do not identify any additional provisions in the Regulations, or specific deficiencies with the DRB's decision, that have not already been discussed. Accordingly, we answer Questions 10 and 11 in the negative.

## Conclusion

For the foregoing reasons, Questions 2, 3, 5, 6, 8, 9, 10, and 11 are answered in the negative. These Questions reflect a general misunderstanding of the DRB's role in reviewing a permit application. However, regarding Questions 4 and 7, Appellants have identified deficiencies with the DRB's decision with respect to building height and gradient, such that the Court is unable to affirm the DRB's decision at this time.

While the record below is thorough and likely contains the materials required by the Regulations for the issuance of a zoning permit, the DRB's decision fails to adequately reference those materials and the relevant provisions of the Regulations upon which it bases its decision with respect to building height and gradient. Accordingly, we **REMAND** the application to the DRB for the limited purpose of determining the building height and the finished grade of the Property. This may or may not require the DRB to reopen the evidentiary portion of the public hearing. If the DRB determines that the existing record is sufficient to allow it to make the necessary findings and conclusions regarding building height and gradient, it may proceed to do so without reopening the hearing. If the DRB decides to reopen the hearing and take additional evidence regarding building height and gradient, it may also proceed in that manner. Any reopening by the DRB should not be viewed as an opportunity for Appellants to relitigate unrelated concerns, although they may present any conflicting evidence on these two topics. The DRB should incorporate its new findings and conclusions into its original decision, resulting in a complete decision upon which the Zoning Administrator may issue a final permit.

Electronically signed on March 26, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division

9